IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **WILLIAM LEROY HARDING,** | ) |
| Plaintiff, | ) |
| v. | )   No. CIV 23-008-RAW-JAR |
| **CORECIVIC, et al.,** | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff is a pro se prisoner in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Allen Gamble Correctional Center in Holdenville, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Davis Correctional Center (DCF), a private prison in Holdenville.[1] The DOC defendants are the DOC and Mark Knutson, DOC Administrative Review Authority (ARA) Manager. The CoreCivic/DCF defendants are CoreCivic, Inc., Officer Keys, DCF Grievance Coordinator Terry Underwood, Cpt. Ellars, Officer/Counselor Pfaff, and Cpt. Bowman.[2]

The Court has before it for consideration Plaintiff's complaint (Dkt. 1) and special reports prepared by officials of the DOC (Dkt. 27) and DCF (Dkt. 32) at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Defendants DOC and Knutson have filed a motion to dismiss (Dkt. 28). Defendants CoreCivic, Inc; Keys, Underwood, Ellars, and Pfaff have filed a motion for summary judgment (Dkt. 33). Plaintiff has not responded to the motions.

**I.    Plaintiff's Allegations**

    **A.    Claim One:  Equal Protection**

Plaintiff, who describes himself as a "black male offender," alleges in Claim 1 of the

---

[1] Allen Gamble Correctional Center is a DOC facility that is located in the former DCF facility.

[2] Defendant Cpt. Bowman has not been served with the complaint. (Dkt. 15)

complaint that he was denied equal protection when he was involved in an altercation with a white inmate on July 27, 2022. He asserts he received three stitches for a facial injury caused by the other prisoner. Plaintiff allegedly was locked in his cell, but the other prisoner was allowed to stay out of his cell while a code was called. (Dkt. 1 at 9-10).

When Officer Ellars came to the unit, he had Plaintiff cuffed, taken to medical, and placed in segregation. Plaintiff claims the other inmate was not written up or sent to segregation. Instead, he was transferred to a lower security facility in Atoka, Oklahoma. Officer Keyes, the disciplinary investigator, allegedly told Plaintiff he could not claim self-defense against the other inmate. Plaintiff was found guilty of fighting. Officers Ellars and Bowman allegedly conspired to write a false report to intentionally discriminate against Plaintiff, a black offender. Defendant Pfaff allegedly joined the conspiracy by telling Ellars and Bowman to ignore Plaintiff's statements and to rely on the white inmate's report of the event. *Id*. at 10-11.

**B.     Claim 2:  Due Process**

Plaintiff alleges in Claim 2 that his right to due process was violated in the above incident, because he was the only inmate who was sent to segregation for seven days without a write-up or a hearing (until the seventh day). He also lost his job for three weeks, lost his bottom bunk housing, and received a 60-day canteen restriction. Plaintiff claims this was an instance of racial discrimination. As stated above, the other inmate in the altercation was white, and all the officers involved were white. *Id.* at 11-12.

Plaintiff reiterates that he was not allowed to plead self-defense, even though the other inmate was much younger than Plaintiff and in better physical shape. Officer Keys allegedly did not take the security camera footage into account or allow Plaintiff to call witnesses. Plaintiff contends Officer Keyes was the prosecutor, judge, and jury. Keyes also allegedly violated the DOC policy that requires all Class A and B violations to be resolved within seven days of the offense report. Keyes allegedly did not ask Plaintiff to sign an extension until 12 days after the incident. *Id.* at 12-14.

**C.     Claim 3:  Racial Discrimination**

In Claim 3, Plaintiff alleges he has been discriminated against because of his African-American race. He asserts Defendants Mark Knutson and Terry Underwood violated his due process and equal protection rights by thwarting the grievance process through denial on frivolous grounds of Plaintiff's attempts at exhaustion of his claims. Ms. Underwood allegedly returned his grievance paperwork several times for frivolous reasons. Further, Knutson allegedly denied Plaintiff's verification of appeal, in violation of DOC policy. Plaintiff maintains these actions made exhaustion of his remedies impossible. *Id.* at 14-16.

## II.     Defendant Oklahoma Department of Corrections

Plaintiff has named the Oklahoma Department of Corrections as a defendant. This agency, however, is entitled to dismissal under the Eleventh Amendment. The Eleventh Amendment bars suits in federal court against a state, regardless of the relief sought. When a state agency is named as a defendant, the Eleventh Amendment continues to bar the action "if the state is the real, substantial party in interest." Oklahoma has not consented to be sued in federal court, *see* Okla. Stat. tit. 51, § 152.1, and § 1983 does not abrogate states' sovereign immunity, *see Will v. Mich. Depot of State Police*, 491 U.S. 58, 66 (1989). Therefore, Defendant Oklahoma Department of Corrections is dismissed without prejudice. *See Rural Water Sewer & Solid Waste Mgt., Dist. No. 1, Logan County, Okla. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).

## III.    Standards of Review

### A.     Motion to Dismiss

Defendant Mark Knutson has filed a motion to dismiss the complaint. (Dkt. 28). The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint also must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful

3

in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

      **B.**    **Motion for Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**IV.    Exhaustion of Administrative Remedies**

Defendants allege, among other things, that Plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). He must properly complete all required steps of the grievance process to exhaust his administrative remedies. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. Dec. 28, 2007); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

**V.    Grievance Process**

**A.    DOC Inmate/Offender Disciplinary Procedures, Policy OP-060125**

DOC Policy OP-060125, "Inmate/Offender Disciplinary Procedures," governs DOC offender complaints regarding disciplinary claims. (Dkt. 27-7). The record shows that Plaintiff was assessed a Class A-2 misconduct for fighting in the July 27, 2022, altercation, and he received a 60-day canteen restriction. (Dkt. 27-1; Dkt. 27-3; Dkt. 27-10). Because Plaintiff's disciplinary writeup was a Class A-2 violation without restitution requested, it was processed by the disciplinary coordinator without a disciplinary hearing. (Dkt. 27-7 at part VI(A)). For Class A violations in which there is no restitution, the response from the facility head is final and may not be appealed further. (Dkt. 27-7 at 29).

On October 31, 2022, the ARA received a misconduct appeal from Plaintiff regarding a Class A-2 offense that occurred on July 27, 2022. (Dkt. 29-9 at 3-4). Plaintiff was notified on November 2, 2022, that his misconduct appeal was improperly filed, because among other things, Class A offenses without restitution imposed are not appealable to the ARA. (Dkt. 27-9 at 2). These disciplinary proceedings did not exhaust the administrative remedies for Plaintiff' claims in his civil rights complaint.

### B.   Administrative Remedies Process, Policy OP-090124

According to an affidavit by Defendant Underwood, DCF Grievance Coordinator, there was an administrative remedies grievance policy available for inmate use at DCF. (Dkt. 33-2). DCF utilized the Oklahoma DOC administrative remedies grievance policy--OP-090124. (Dkt. 33-2; Dkt 33-3). *See also* Affidavit of Defendant Knutson, DOC ARA Manager. (Dkt. 27-6 at 2).

According to DOC Offender Grievance Process OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff. If that is unsuccessful, he may submit a Request to Staff (RTS) to the appropriate staff member within seven calendar days of the incident, alleging only one issue or incident per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance, attaching the RTS with the response from the staff member. If the grievance also does not resolve the issue, the inmate may appeal to the DOC ARA, Personal Identity ARA, or Medical ARA, whichever is appropriate. The administrative process is exhausted only after all of these steps have been taken. (Dkt. 27-4; Dkt. 33-3).

Defendants allege Plaintiff did not exhaust any issues in his lawsuit. (Dkt. 28 at 6-7; Dkt. 33 at 7-9). According to DCF Grievance Coordinator Terry Underwood's affidavit, Plaintiff submitted two grievances following the July 27, 2022, incident. (Dkt. 33-2 at 3).

### 1.   Grievance No. 2022-1001-00229-G

The record shows that Plaintiff's first grievance, No. 2022-1001-00229-G, was received in the warden's office on August 16, 2022.  The grievance concerned the incident on July 27, 2022.  Attached to the grievance was an RTS dated August 2, 2022, addressed to Chief of Security Brown.  The RTS was stamped as received in the facility law library on August 3, 2022, and was assigned No. 22-3524-1.  Plaintiff acknowledged in the RTS that he had been in an altercation with another inmate but claimed he had acted in self-defense.  He complained that the responding officer placed him in segregation but did not place the other participating inmate in segregation.  In addition, the white inmate was not written up.  Under "Action Requested" Plaintiff stated in the RTS as follows: "All justice that is available by DOC Policy, State and Federal Civil laws and any and all compensation allowed by those laws."  Chief of Security Brown responded to the RTS on August 9, 2022, advising that Plaintiff could not grieve more than one thing at a time, and the grievance was returned to Plaintiff on August 11, 2022.  (Dkt. 27-6 at 2; Dkt. 33-2 at 3; Dkt. 33-5 at 7-10)

After reviewing Grievance No. 2022-1001-00229-G, Underwood recommended to the warden that it be returned to Plaintiff unanswered because of submission errors.  Underwood's two-page return memorandum specifically noted the deficiencies, including umtimeliness, presentation of more than one issue, and request for monetary compensation.  The return memorandum was signed by the warden on August 18, 2022, and Plaintiff was sent a copy on that date. (Dkt. 33-2 at 3-4; Dkt. 33-5 at 5-6).

Plaintiff appealed the facility's response to the DOC ARA.  The appeal was returned unanswered with a return memorandum dated September 9, 2022, explaining the reason for the return.  The appeal had included attachments which were not allowed, and it was not written on the appeal form. Plaintiff was given one final opportunity to properly resubmit his appeal within ten days. (Dkt. 27-6; Dkt. 33-2 at 4; Dkt. 33-5).

Plaintiff resubmitted his appeal to the DOC ARA.  The Director's Designee again returned the appeal by memorandum on October 21, 2022, because it was been improperly filed.  Plaintiff received and signed the return memorandum.  (Dkt. 33-4 at 4; Dkt. 33-5 at 3).

Plaintiff then submitted to the DOC a request to submit a misconduct/grievance appeal out of time. That request was stamped as received by the ARA on October 31, 2022. On November 2, 2022, the Director's Designee denied Plaintiff's request as untimely and for failure to following previous instructions. Underwood gave the ARA's written decision to Plaintiff on November 17, 2022. None of Plaintiff's claims were exhausted by the submission or appeals of Grievance No. 2022-1001-00229-G. (Dkt. 27-6; Dkt. 33-2 at 4; Dkt. 33-5 at 2-3).

### 2.   Grievance No. 2022-1001-00326-G

Plaintiff submitted an RTS dated October 17, 2022, which was designated as No. 22-4833. The RTS was addressed to Chief of Security Brown and discussed a welfare check of Plaintiff that was performed by staff during the evening on October 15, 2022. Assistant Warden Perez responded to the RTS on October 25, 2022. (Dkt. 33-2 at 4; Dkt. 33-5 at 15-16).

Plaintiff then submitted Grievance No. 2022-1001-326-G, which was stamped as received on November 1, 2022. Plaintiff attached RTS No. 22-4833 to the grievance. In the grievance, Plaintiff discussed the welfare check. (Dkt. 33-2 at 4-5; Dkt. 33-5 at 13-14)

Underwood reviewed the grievance and recommended to the warden that it be returned unanswered to Plaintiff because of improper submission issues. Underwood prepared a two-page return memorandum that specifically noted the grievance submission had improperly included a request for disciplinary action against staff. The return memorandum was signed by the warden on November 4, 2022. Underwood sent a copy of the return memorandum to Plaintiff on November 7, 2022. Plaintiff did not file an appeal of Grievance No. 2022-1001-00326-G. No issues or claims presented in Plaintiff's complaint were administratively exhausted by this grievance. (Dkt. 33-2 at 5; Dkt. 33-5 at 11-12).

### 3.   Interference with Grievance Process

Plaintiff makes vague and conclusory assertions in his complaint that Defendants Knutson and Underwood thwarted and hindered his attempts to exhaust administrative remedies by imposing frivolous restrictions. (Dkt. 1 at 15). He, however, does not show that these defendants violated

DOC Policy OP-090124

The Court finds the necessary forms were available to Plaintiff, as were the grievance and appeal process and procedures. (Dkt. 33-2; Dkt. 33-5; 33-6). Plaintiff's submissions contained procedural defects (Dkt. 33-2), and the DOC grievance policy clearly states that if instructions are not followed, submitted grievances may be returned unanswered. (Dkt. 33-3, OP-090124). The Court finds the defendants did not interfere with or thwart Plaintiff's attempts to exhaust his administrative remedies.

**VI.   Discussion**

After careful review the Court finds that Plaintiff has failed to state a claim upon which relief can be granted with respect to Defendant Mark Knutson. *See* Fed. R. Civ. P. 12(b)(6). Therefore, Knutson's motion to dismiss (Dkt. 28) is granted.

The Court further finds there are no genuine issues of material fact with regard to the fact that Plaintiff has not properly exhausted the administrative remedies for his claims against Defendants CoreCivic, Inc., Keys, Underwood, Ellars, and Pfaff. Therefore, the motion for summary judgment by Defendants CoreCivic, Inc., Keys, Underwood, Ellars, and Pfaff (Dkt. 33) is granted.

**ACCORDINGLY,**

1. Defendant Oklahoma Department of Corrections is dismissed without prejudice.
2. Defendant Mark Knutson's motion to dismiss (Dkt. 28) is granted.
3. Defendants CoreCivic, Inc., Keys, Underwood, Ellars, and Pfaff's motion for summary judgment (Dkt. 33) is granted.
4. This action is dismissed in its entirety.

**IT IS SO ORDERED** this 11th day of March 2024.

*Ronald A. White*
Ronald A. White
United States District Judge
Eastern District of Oklahoma